**Cheryll LaROCHE and Fritz LaRoche, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 85–5113.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1985.

Decided Dec. 26, 1985.

As Changed Jan. 16, 1986.

---

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

## PER CURIAM.

This case, before this court on appeal for the second time, concerns a dental malpractice suit brought by Cheryll and Fritz LaRoche against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2674 (1978).[1] The LaRoche's complaint alleged that Dr. Hopper, a dentist with the Indian Health Service, was negligent in performing a root canal procedure on Ms. LaRoche. In its first order, the district court[2] found in favor of the United States. On appeal from that judgment, this court remanded the case to the district court for further findings because of the district court's error in assessing contributory fault to Ms. LaRoche for missing appointments with Dr. Hopper *before* the alleged malpractice occurred. *LaRoche v. United States*, 730 F.2d 538, 539 (8th Cir.1984). On remand, the district court allowed Dr. Hopper to further explain his earlier testimony regarding his treatment of Ms. LaRoche. The district court then reviewed the entire record and, based on the expert testimony from the first trial that Dr. Hopper had at all times followed the correct procedures, again found that Dr. Hopper was not negligent. The district court therefore entered judgment in favor of the United States.

■ On this appeal, the plaintiffs contend that the district court's findings are clearly erroneous and that judgment should be entered in their favor. Because negligence is a question of fact, the reviewing court may reverse a district court's finding of no negligence only if that finding is clearly erroneous.[3] The recent Supreme Court decision of *Anderson v. Bessemer City*, ── U.S. ──, 105 S.Ct. 1504, 84

Rick Johnson, Gregory, S.D., for appellants.

Bonnie P. Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

---

1. Jurisdiction is based on 28 U.S.C. § 1346(b) (1982).

2. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

3. Fed.R.Civ.P. 52(a) provides in pertinent part:

"Findings of Fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness."

L.Ed.2d 518 (1985), emphasizes the rigid standard guiding appellate court review of findings of fact under the clearly erroneous rule: "If the district court's account of the evidence is plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1512. More simply stated, it is not the function of appellate courts to decide factual issues *de novo.* *Id.* at 1511–12.

■ The deference appellate courts may give to trial court findings of fact is not, however, unlimited. Even where there is evidence to support a factual finding, the reviewing court must reverse that finding if " 'on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed.' " *Id.* at 1511 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) ). After a careful review of the entire record, we must conclude that this case falls within that narrow class of exceptional cases where, although there is evidence to support the trial court's finding, we are left with a firm conviction that a mistake has been made. We therefore reverse the trial court's finding on the issue of negligence and enter judgment for the plaintiffs, remanding to the district court for a trial on damages. In explaining our holding we set forth the following historical review of the record.

**Facts**

Cheryll LaRoche and her husband Fritz are enrolled members of the Lower Brule Sioux Tribe. Ms. LaRoche first sought dental care from Dr. Hopper, an Indian Health Service dentist, on October 19, 1978, because of pain and swelling in her lower jaw. Dr. Hopper determined that Ms. La-Roche suffered from a bacterial infection and that root canal surgery on four teeth was necessary to alleviate the infection.

On October 27, Dr. Hopper began the root canal procedure by cleaning and draining the canals of decay material, closing the canals with cotton pellets coated with an antibiotic, and sealing the canals with a temporary filling material called Cavit. On November 15, Dr. Hopper instrumented the root canals to shape them for the permanent filling material, again closed the canals with cotton pellets coated with an antibiotic, and resealed the canals with Cavit. Although Dr. Hopper intended to fill the canals permanently on November 21, Ms. LaRoche cancelled this and at least one subsequent appointment.

Ms. LaRoche returned to Dr. Hopper on March 5, 1979. After telling Ms. LaRoche that the more than three month delay between the initial instrumentation and the permanent filling would seriously compromise the chances of success, Dr. Hopper "reinstrumented" and then permanently filled the canals. When Ms. LaRoche returned to Dr. Hopper the next day because of intense pain and swelling in her lower jaw, Dr. Hopper reopened two teeth to initiate drainage and prescribed penicillin for the infection. The pain and swelling worsened, resulting in Ms. LaRoche's hospitalization.[4]

In 1980, the LaRoches commenced a negligence action against the United States, as Dr. Hopper's employer, under the Federal Tort Claims Act, 28 U.S.C. § 2674 (1978). Ms. LaRoche sought damages for medical expenses and pain and suffering; her husband Fritz sought damages for lost services and loss of consortium. After a bench trial, the district court determined that Dr. Hopper was not negligent and entered judgment for the United States. On appeal to this court, we vacated the district court's order and remanded to the district court for reconsideration on the ground that the district court improperly assessed contributory fault to Ms. LaRoche because she failed to keep her appointments. *LaRoche v. United States,* 730 F.2d 538, 539 (8th Cir.1984). We determined that the missed

---

**4.** In September of 1979, Ms. LaRoche decided to have the infected teeth extracted rather than attempting once again to save the teeth with root canal surgery.

appointments did not relieve Dr. Hopper from following proper procedures, stating that "[i]f anything, the fact that temporary fillings had been in place for almost four months and that the chance of reinfection was increased suggests a greater risk of harm to the patient unless proper procedures are followed by the dentist in charge." *Id.* at 540. We therefore remanded the case to the district court with instructions to consider "whether Dr. Hopper proceeded in the correct manner, especially considering the fact that temporary fillings had been in place for 3½ months longer than they should have been[,] .... [and] whether Dr. Hopper was negligent in not washing the canals with sodium hypochlorite ... and in not renewing the whole procedure over again on March 5." *Id.* at 542.

On remand, the district court heard additional testimony from Dr. Hopper and his dental assistant, primarily on the issue of whether Dr. Hopper washed out the canals with sodium hypochlorite. The district court then issued a memorandum opinion again finding that Dr. Hopper was not negligent based on its findings that Dr. Hopper did use sodium hypochlorite in the root canal procedure and that insertion of the permanent fillings after a 3½ month delay was not improper. The LaRoches appeal the district court's decision, contending that the district court's findings on these issues are clearly erroneous.[5]

**Discussion**

As we emphasized in our earlier opinion, the major issues facing the trial court on remand were (1) whether Dr. Hopper knew or should have known, in light of the existing circumstances, that there was an increased possibility of infection on March 5 when he permanently filled Ms. LaRoche's canals, and (2) whether, in light of such knowledge, Dr. Hopper took adequate precautions to protect against that possibility.

*LaRoche,* 730 F.2d at 539, 542. Ultimately, this case turns on whether Dr. Hopper acted properly in completing the root canal on March 5 after a 3½ month delay since the initial instrumentation or whether Dr. Hopper should have started the entire procedure over on March 5, only reinstrumenting the canals and inserting temporary fillings that day and waiting at least forty-eight hours to fill the canals permanently.

It is undisputed that the almost four month delay between the preparation of the canals for the permanent fillings and the final filling of the canals seriously compromised the chance of success. All experts testifying at trial agreed that permanent fillings should be inserted within fourteen days of the initial instrumentation of the canals while the medication in the temporary fillings is still effective and the fillings are intact. Dr. Hopper himself repeatedly testified that this delay "seriously compromised" the chance of success:

> Any longer that you wait, the chance that the treatment will fail increases substantially for two or three reasons. The antibiotic will stop functioning after a while. If you give an antibiotic for too long of a time to a patient, the germ you're trying to kill will develop a resistant strain on the antibiotic and the temporary filling will only last for ten days or so until it starts to leak, and once the saliva and food particles are to get down the canals, then there is a possibility of reinfection.

(Exhibit 25 at 13–14). Based on this testimony, the district court found in its initial opinion that temporary fillings should only remain for a maximum of seven to ten days and that "[l]onger intervals compromise the chances of success by the possibility of gas or infectious material entering the nerve canal, irritating the tissue below, and

---

**5.** On remand, the district court determined that Ms. LaRoche failed to prove that Dr. Hopper did not wash the opened canals with sodium hypochlorite. The trial court's finding was based on the testimony of Dr. Hopper and his dental assistant that Dr. Hopper used sodium hypo-

chlorite in all root canal procedures, including each time he worked inside the canals of Ms. LaRoche's teeth. Because the evidence adequately supports the trial court's finding on this issue, we hold that it is not clearly erroneous.

reinfecting the tissues surrounding the nerve canals."

Despite the admitted increased possibility of infection, Dr. Hopper proceeded on March 5, 1979, as he would have proceeded on November 21, 1978, had Ms. LaRoche not cancelled her appointment. Dr. Hopper went into the canals with paper points to ensure there was no exudate or any other material in the canals. (Tr. II at 43, 82). Finding no visible signs of infection, Dr. Hopper filled the canals with the permanent filling material. (Tr. II at 43). On remand, as in the first trial, the trial court concluded that Dr. Hopper followed the proper procedures on March 5 even though the chance of infection was admittedly enhanced. We must reverse the district court's finding on this issue for several reasons.

Our original opinion pointed out that the missed appointments were irrelevant to the issue of whether Dr. Hopper was negligent on March 5. We observed:

> The alleged malpractice takes place subsequent to the missed appointments. Dr. Hopper's responsibility was to proceed with the treatment required under the existing circumstances. * * * The fact that Ms. LaRoche may have set in motion the increased likelihood of infection does not relieve Dr. Hopper from providing proper care under the circumstances. Dr. Hopper should not use a lesser standard of care because the patient did not keep earlier appointments; nor does it follow that he may use a lesser standard of care because he fears she may miss future appointments.

*LaRoche,* 730 F.2d at 541–42.

In deciding on remand that Dr. Hopper was not negligent, however, the trial court took little additional evidence, instead relying primarily on the testimony of the government's expert witnesses from the first trial. Although these experts did testify that Dr. Hopper acted properly in permanently filling the canals on March 5, the experts considered the fact that Ms. LaRoche had cancelled several appointments and speculated that she might not show up

for future appointments in forming their opinions. The experts thus approved of Dr. Hopper's decision to fill the canals permanently on March 5 rather than beginning the procedure over, which would have required at least one additional appointment.

For example, Dr. Garth A. James, an endodontics expert from the University of Nebraska and the government's primary expert, stated that:

> The proper procedure was followed in light of the total history, as I have read it and seen it presented here, yes. . . . It would not be ideal in the sense, normally, we like to have that completed in a shorter period of time, *but in light of the recorded missed appointments* and so forth, I would have proceeded—the treatment he proceeded with was proper.

(Tr. III at 62) (emphasis added). Additionally, Dr. Hopper stated in a deposition that he had asked Dr. Richard J. Schoessler, the dentist who later extracted Ms. LaRoche's teeth, what Dr. Schoessler thought of the case. Dr. Schoessler replied, "it was Cheryll's own fault for not getting it treated *and for missing the appointments."* (Exhibit 25 at 29) (emphasis added). Dr. Hopper also stated, when asked why he did not start the whole process over on March 5, that "[t]he increased amount of time which the canals would have remained open *plus the fact that I had poor patient compliance with coming in for appointments* would significantly decrease the chances of that being successful." (Tr. III at 5–6) (emphasis added). Once the impermissible taint of the missed appointments is removed from the experts' opinions, the clear implication is that Dr. Hopper did not proceed properly in permanently filling Ms. LaRoche's canals after a 3½ month delay, without first reinstrumenting the canals, inserting temporary fillings coated with an antibiotic, and waiting forty-eight hours for any signs of infection.

 That the expert opinions on which the district court relied were tainted by consideration of the missed appointments would itself be a sufficient basis for reversing the district court's finding that Dr.

Hopper was not negligent. Our review of the record, however, leads us to conclude that not only is the district court's finding of no negligence clearly erroneous, but also that Dr. Hopper was in fact negligent in permanently filling Ms. LaRoche's canals on March 5. Although reversal of a trial court finding of fact as clearly erroneous generally requires a remand to the district court for further proceedings, *see Pullman-Standard v. Swint*, 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982), the reviewing court may make the appropriate finding in the first instance where the record permits only one resolution of the factual issue. *Patterson v. Greenwood School District 50*, 696 F.2d 293, 295–96 (8th Cir.1982); *see also Pullman-Standard*, 456 U.S. at 291–92, 102 S.Ct. at 1791–92. After a thorough review of the entire record, in light of our earlier opinion that the missed appointments bear only on whether Dr. Hopper knew or should have known of the increased risk of infection, we feel that the record supports but one conclusion: that Dr. Hopper was negligent in permanently filling the canals of Ms. LaRoche's teeth after an almost four month delay without taking additional precautions.

One of the government's experts admitted that the proper procedure in the case of a long delay after the initial instrumentation of the canals is to start the entire root canal procedure over again. Dr. Charles Richter, a dentist from South Dakota and an expert witness for the United States, was asked at trial what the proper procedure would have been had Dr. Schloessler completed the root canal procedure on Ms. LaRoche in August 1979 rather than extracting her teeth. Dr. Richter replied that, assuming the patient was asymptomatic, as Dr. Hopper claimed Ms. LaRoche was on March 5, 1979, the proper procedure would be first to debride and sterilize the canals and then to wait at least forty-eight hours before permanently filling the canals. (Tr. III at 119–22). Thus, although Dr. Richter testified that Dr. Hopper acted properly in permanently filling the canals after a 3½ month delay, when

asked what the correct procedure would be in a comparable hypothetical, Dr. Richter stated that the proper procedure would be to start over.

A review of the proper root canal procedure when the appointments are kept as scheduled further confirms the necessity of beginning the entire procedure over when there has been a 3½ month delay. Generally, after the initial instrumentation, the canals are filled with cotton pellets soaked in an antibiotic that keeps the bacteria count static and sealed with Cavit. Anywhere from two to fourteen days later, after allowing time for any possible flare up to manifest itself but before the antibiotic has expired, the canals are reinstrumented and, if no signs of infection are found, permanent fillings are placed in the canals. In this case, there was a 3½ month delay between the initial instrumentation and the permanent filling. Although Dr. Hopper stated that Ms. LaRoche's temporary fillings were still in tact after 3½ months, the antibiotic had long since ceased to be effective. As Dr. Hopper testified, "Once the antibiotic therapy is initiated, time becomes extremely critical and throughout the endodontic procedure you only have so much time to be able to have the best result." (Tr. II at 23). Dr. Hopper also explained that "even though there were no signs of infection, that doesn't mean that an infection couldn't have been present. There is no absolute way to tell whether an infection is present or not." (Exhibit 25 at 16).

Yet despite his admission that the probability of infection was greatly increased by the 3½ month delay, Dr. Hopper decided to "go ahead and try and see how it turned out" without taking any additional precautions (Exhibit 25 at 15). In fact, Dr. Hopper took fewer precautions on March 5, 1979, than he would have taken had he completed the root canal procedure as planned on November 21, 1978, because the antibiotics had long since expired. Dr. Hopper explained that he decided to fill the canals permanently on March 5, despite the 3½ month delay, because there were no visible signs of infection in the canals.

This explanation must be evaluated in light of Dr. Hopper's testimony, and the testimony of other expert witnesses, that the canals could have been infected even though there were no visible signs of infection. In light of the admitted increased risk of an untoward result because of the delay, Dr. Hopper's decision to complete the root canal procedure on March 5 with even fewer precautions against infection than if the procedure had been completed as scheduled flies in the face of a basic tenet of negligence law that the degree of care must be commensurate with the known risk. W.P. Keeton, *Prosser and Keeton on the Law of Torts,* § 31 at 171 (5th ed. 1984).

Our review of the entire record leads us to conclude that not only was the trial court clearly erroneous in finding that Dr. Hopper was not negligent in completing the root canal procedure after a 3½ month delay, but also that Dr. Hopper's actions were in fact negligent. We therefore reverse the trial court's finding and enter judgment in favor of plaintiffs Cheryll La-Roche and her husband Fritz. Because the district court concluded that Dr. Hopper was not negligent, it did not reach the issue of damages. We therefore remand this proceeding to the district court for a determination of damages. *See Pullman-Standard,* 456 U.S. at 291–92, 102 S.Ct. at 1791–92.