5 F.3d 531
NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
 FIRST BANK OF OAK PARK, Appellee,
v.
William P. HIGDON; Byron Constance, Appellants.
 No. 92-3927.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: September 14, 1993.
Filed: September 17, 1993.
 
 Before MAGILL, Circuit Judge, LAY and BRIGHT, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellants Byron Constance and William Higdon (the guarantors) appeal from the district court's[1] judgment finding each of them liable to appellee First Bank of Oak Park (First Bank) for up to $33,333.33 under guaranties both had executed. They claim that the district court's finding that Security Grain Company (Security) had no net worth on May 12, 1990, was clearly erroneous. We affirm.
 
 I. BACKGROUND
 
 2
 In October 1985, Security executed a promissory note in favor of First National Bank of St. Joseph, Missouri, for $376,000. On the same day, the guarantors and Paul L. Roberts each signed agreements guaranteeing repayment of Security's promissory note. Each guaranty contained a clause providing that the amount of the guarantor's liability was "limited to one-third the difference between $100,000.00 and the net worth of Security Grain Company, said net worth to be determined at the time payment is demanded under this guaranty." Sometime thereafter, First Bank acquired the rights to the promissory note and guaranties.
 
 
 3
 On May 12, 1990, First Bank deemed Security in default on the note after Security failed to make late payments as demanded. First Bank then brought suit on June 8, 1990. After disposition of the property securing the note, a deficiency of $59,935.02 remained. The district court then held a bench trial in August 1992 to determine whether the guarantors were liable for any of the deficiency. At issue was whether Security's net worth was less than $100,000 on May 12, 1990, the date "payment [wa]s demanded" for purposes of the guaranties, thus triggering the guarantors' liability.
 
 
 4
 Frederick Body, First Bank's vice president, testified that Security had no net worth on May 12, 1990, the date in question. He based his conclusion on his belief that Security owned only the assets securing the loan and that its liabilities thus exceeded its assets. There was also evidence that Security's arrearage as of May 1, 1990, was $13,603.93; that Security did not respond to First Bank's demand letter of May 1, 1990, requesting payment by May 12, 1990; that Security owed additional debts to another bank; and that Security lost its charter to do business in Missouri in July 1990.
 
 
 5
 For the guarantors, Don Ellefson testified that he sold his one-quarter interest in Security for about $53,000 in 1987, but that he had no personal knowledge of Security's assets as of May 12, 1990. Byron Constance also testified that he sold his one quarter interest in Security for about $53,000 in 1987. The guarantors claim that these stock sales suggest that the company had a net worth of $212,000 in 1987. Neither the guarantors nor First Bank offered Security's financial records into evidence.
 
 
 6
 The district court found that First Bank had "satisfied its burden and ... show[n] that the net worth of Security ... on May 12, 1990, was zero or less." Tr. of Ruling from the Bench, at 3. The court concluded that First Bank had established that Security's liabilities exceeded its assets as of May 12 and found unpersuasive the guarantors' evidence that Security might have had other assets that were not taken into account because such testimony was not "based on a knowledge of the operation of Security ... after 1987." Id. The court also noted that even assuming the company was worth $212,000 in 1987 and no drastic changes occurred in the next three years, the liabilities in 1990 of $269,000 still exceeded the "assets" of $212,000. The court qualified this statement, however, by observing that "there's no direct correlation maybe between the value of the company in 1987 as determined by its stock price and its net worth." Id. at 4. The guarantors claim that the court's finding of no net worth was clearly erroneous.
 
 II. DISCUSSION
 
 7
 Under Federal Rule of Civil Procedure 52(a), we may not set aside findings of fact made by the trial court unless such findings are "clearly erroneous." Fed. R. Civ. P. 52(a). A finding of fact is clearly erroneous when " 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). This standard does not permit us to reverse the trial court simply because we would have decided an issue differently. Id. Indeed, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 574. Moreover, Rule 52(a) requires even greater deference when the trial court's findings depend on judgments regarding the credibility of witnesses. Id. at 575; see Fed. R. Civ. P. 52(a). In short, in only a "narrow class of exceptional cases" should we reverse a trial court's finding of fact. LaRoche v. United States, 779 F.2d 1372, 1374 (8th Cir. 1985).
 
 
 8
 Because the district court's determination that Security had no net worth as of the critical date of May 12, 1990, is a finding of fact, Anderson and Rule 52(a) control our analysis. Applying the foregoing standards, we hold that this finding was not clearly erroneous. The district court was entitled to give dispositive weight to the testimony of Mr. Body and the other evidence suggesting that Security's liabilities exceeded its assets.
 
 
 9
 The guarantors argue that the court's finding that Security had no net worth was clearly erroneous because Mr. Body's conclusion assumed that Security's only assets were those securing the note, an assumption they contend the testimony of Mr. Constance and Mr. Ellefson contradicts. That Security had an alleged net worth of $212,000 in 1987, they assert, suggests that the company had assets besides those securing the note which neither Body nor the court took into account in their calculations. We find, however, that the court was entitled to conclude that the fact that the company had other assets such as good will in 1987 does not establish that those assets existed in 1990, especially in light of the court's observation that "between 1987 and 1990 ... some negative things ... happened to the company." Tr. of Ruling from the Bench, at 4.
 
 
 10
 Thus, even though we may weigh the evidence differently, it was not clear error for the court to give no weight to testimony from former Security owners who had no personal knowledge regarding the company's current financial status or operations. In addition, that the court had the opportunity to assess the credibility of the witnesses in person makes us even more reluctant to interfere with its finding.
 
 
 11
 The guarantors also assert that the court erroneously assumed that the $212,000 figure represented the company's assets, instead of its net worth, in 1987. Based on this false assumption, they claim, the court counted the liabilities of Security twice when it stated that the $269,000 debt in 1990 exceeded the "assets" of $212,000. We reject this argument for two reasons. First, the court's net worth calculation did not depend on the $212,000 figure. The record shows that the basis for the court's finding was that First Bank produced evidence showing that Security's liabilities exceeded its assets and that the guarantors did not produce persuasive evidence establishing the existence of assets besides those securing the note. Moreover, the court's recognition that there may not even be a "direct connection" between net worth and value as determined by stock price suggests that it was not relying on the figure but was using it for illustrative purposes only. In the end, we do not have "the definite and firm conviction that a mistake has been committed" that the Supreme Court requires.
 
 III. CONCLUSION
 
 12
 We hold that the district court's finding that Security Grain Company had no net worth as of May 12, 1990, was not clearly erroneous. We thus affirm the district court's order granting judgment to First Bank of Oak Park and finding the guarantors liable for up to $33,333.33 each.
 
 
 
 [1]
 The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri