# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2183

_____

| | |
|---|---|
| Stanley Little White Man, Jr., | * |
| Administrator of the Estate of | * |
| Stanley Little White Man, Sr., | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of South Dakota |
| | * |
| United States of America, | * |
| | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: January 13, 2006
Filed: May 4, 2006

_____

Before LOKEN, Chief Judge, McMILLIAN[1] and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

_____

[1]The Honorable Theodore McMillian died on January 18, 2006. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E. The opinion is consistent with the views expressed by Judge McMillian at the conference following oral argument.

Stanley Little White Man, Jr., as Administrator of the Estate of Stanley Little White Man, Sr., brought suit against the United States for negligence pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). The appellant claimed that the Indian Health Service's (IHS) failure to refer Little White Man, Sr. for a biopsy of his gum tissue caused his death. The district court,[2] following a bench trial, found any substandard care that might have been given by the IHS was not the proximate cause of Little White Man, Sr.'s death. We affirm.

I. Background

On November 5, 1997, Little White Man, Sr. went to the IHS dental clinic in Kyle, South Dakota, complaining of tooth pain on the upper-left side of his mouth. He was examined by Dr. Maria-Paz Smith. Dr. Smith found gross decay and periodontitis throughout his mouth. She indicated that his palate was inflamed and found a painful, inflamed abscess between teeth ten and eleven. Dr. Smith recommended the removal of teeth nine, ten, eleven, and twelve.

Little White Man, Sr. did not want to have all four teeth extracted that day and asked Dr. Smith to remove the "worst tooth." Dr. Smith surgically removed tooth eleven. As part of the removal, she had to cut the tooth out of the jawbone because it had fused to the bone. Dr. Smith prescribed Tylenol for the pain and amoxicillin for the infections in his mouth. Dr. Smith testified that at that time she did not see anything that resembled oral cancer, such as indurated or grainy tissue. Rather, the area around tooth eleven was bloody and soft, which is normal for an abscess.

On November 12, 1997, Little White Man, Sr. returned to the IHS clinic. He complained of pain in teeth nine and ten. Dr. Smith removed both teeth and again

---

[2]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

prescribed amoxicillin and Tylenol. Dr. Smith testified that the extraction site for tooth eleven was healing normally. There were no palpable lesions or indurated or grainy tissue. Although Dr. Smith recommended that Little White Man, Sr. return for a full dental exam, no appointment was scheduled. Little White Man, Sr. did not return for an exam.

On December 8, 1997, Little White Man, Sr. returned to the clinic because of pain in tooth twelve, which was grossly decayed. Dr. Smith extracted the tooth but did not perform a full dental exam. She again prescribed amoxicillin and Tylenol. Dr. Smith testified that at that time, she did see periodontitis, but no manifestation of oral cancer such as a lesion.

On December 12, 1997, Little White Man, Sr. returned because he was still in pain. Dr. Smith was unable to see him due to other appointments, so he went to the IHS dental clinic in Pine Ridge, South Dakota. Little White Man, Sr. was seen by Dr. Victor Igunbola.

At that visit, Little White Man, Sr. complained of throbbing pain in the entire extraction site. Dr. Igunbola did not have Little White Man, Sr.'s records and had not spoken to Dr. Smith. He knew that Little White Man, Sr. was taking amoxicillin and that Dr. Smith had removed four teeth. However, he erroneously believed that they had all been removed on the same day, December 8, 1997. Dr. Igunbola diagnosed a dry socket in the extraction site of tooth eleven. He did not identify any condition, such as indurated or grainy tissue that would indicate the need for a referral to a specialist. Dr. Igunbola did order a panoramic x-ray to rule out a pathological cause of the pain, such as bone loss, an abscess, or the presence of a piece of an extracted tooth. The x-ray indicated nothing unusual. Dr. Igunbola rinsed the extraction site and placed a dressing on the dry socket. He asked Little White Man, Sr. to return in three days to see the dentist on duty.

Little White Man, Sr. did not return in three days, but returned to the Pine Ridge Clinic for emergency care on December 29, 1997. Little White Man, Sr. was examined by Dr. Michael Cangemi, who identified a dry socket without a blood clot. Dr. Cangemi had the record from the previous Pine Ridge visit and was aware that Little White Man, Sr. had been seen at the Kyle clinic, although he did not know that the extractions were not done all at once, but rather over four weeks. Little White Man, Sr. stated that the dressing that Dr. Igunbola had placed in the dry socket had fallen out on the evening of December 12. Dr. Cangemi did not observe any indurated or grainy tissue indicating the need for a visit with a specialist and instructed Little White Man, Sr. to return in two days to check the dry socket.

On January 14, 1998, Little White Man, Sr. saw Dr. Lawrence Gunner, a dentist in private practice in Martin, South Dakota. Little White Man, Sr. complained of pain in his jaw and around his ear, swollen gums, bad breath, and an unpleasant taste in his mouth. Dr. Gunner examined Little White Man, Sr. and observed a large, unhealed area of red gum tissue. He found the gum tissue to be indurated and grainy. Part of Little White Man, Sr.'s inner nostril was red and swollen. Dr. Gunner ordered a panoramic x-ray, which suggested possible concern "in the maxillary sinus area." As a result, Dr. Gunner concluded that Little White Man, Sr. did not have a dry socket. Rather, he believed that Little White Man, Sr.'s condition might have been caused by cancer, and thus he referred Little White Man, Sr. to Dr. Dale Gunderson, an otolaryngologist in Rapid City, South Dakota. Further, Dr. Gunner informed Dr. Gunderson of the symptoms he observed via facsimile.

On January 15, 1998, Dr. Gunderson examined Little White Man, Sr. Dr. Gunderson found that Little White Man, Sr. had a swollen, non-healing lesion. He performed a biopsy and ordered x-rays and a CAT scan of Little White Man, Sr.'s face and sinuses. On January 19, 1998, Dr. Gunderson notified Little White Man, Sr. that his biopsy was positive for squamous cell carcinoma. The x-rays revealed a mass in the area where his teeth had been and in the maxillary sinus. The mass in Little White

-4-

Man, Sr.'s sinus was later diagnosed as benign, but the lesion in his mouth was a moderately differentiated squamous cell carcinoma. Dr. Gunderson referred Little White Man, Sr. to Dr. Ronald Drummond for a radiation treatment consultation.

Little White Man, Sr. was advised by Dr. Gunderson and Dr. Drummond that surgical removal of his tumor was his best option and that they would evaluate the need for radiation therapy after the operation. The tumors were removed by Dr. Gunderson on February 5, 1998. He found that the margins of the tissue he removed were free of cancer. Accordingly, Dr. Drummond and Dr. Gunderson agreed that radiation therapy was not necessary given the "good margins" and the serious side effects of radiation therapy. Following the procedure, Dr. Gunderson classified the tumors as a stage 2 (T2) carcinoma. Dr. Gunderson estimated that Little White Man, Sr. had a seventy-five to eighty percent chance of survival following surgery and radiation. If the tumor had been a stage 1 (T1) mass, Dr. Gunderson estimated that Little White Man, Sr. would have had a ninety percent chance of survival with either surgery or radiation.

In April 1998, Little White Man, Sr. found a lump on his neck. A needle biopsy indicated that it was not cancerous. He was prescribed antibiotics for the lump, but it continued to grow. A second biopsy was ordered on May 26, 1998. This biopsy also showed no evidence of cancer.

On June 9, 1998, a CAT scan showed an abscess and a suspicious-looking cervical lymph node beneath the abscess. Because the lymph node could not be reached with a needle, Dr. Gunderson surgically removed the lymph node. A biopsy of the node was positive for recurrent cancer.

The recurrence of a rapidly growing cancer significantly worsened Little White Man, Sr.'s prognosis. In light of the recurrence, Dr. Gunderson and Dr. Drummond proposed a more aggressive course of treatment despite the possibility of side effects.

On June 22, 1998, Little White Man, Sr. had a right radical neck dissection - the surgical removal of lymph nodes from the right side of the neck. Little White Man, Sr. underwent daily radiation treatments to his shoulders and neck until September 1998. The radiation therapy affected his sense of taste and caused dry mouth, making it difficult for him to eat. Additionally, the cancer spread to the base of his skull, which could only be treated with radiation. On October 6, 1998, Little White Man, Sr. saw Dr. Gunderson for a follow-up visit. At that time, Dr. Gunderson saw "no evidence of disease."

In January 1999, the cancer on the right side of Little White Man, Sr.'s neck returned. He was referred to the Mayo Clinic in Rochester, Minnesota. Little White Man, Sr. began chemotherapy because the lesion was inoperable and his body could not tolerate further radiation treatment. The cancer was incurable at this juncture, and thus the chemotherapy was given to try to relieve Little White Man, Sr.'s pain. He died of cancer on May 5, 1999.

Little White Man, Sr.'s estate brought this action, claiming that a referral to a specialist should have been made by the IHS dentists who treated Little White Man, Sr. The district court found that the plaintiffs had failed to show that any negligence by the IHS was the proximate cause of Little White Man, Sr.'s death. Appellant now brings this timely appeal.

II. Discussion

In analyzing this FTCA action, we apply the law of South Dakota, the state in which the acts underlying the complaint occurred. 28 U.S.C. § 1346(b). South Dakota law states that "[n]egligence is the breach of a duty owed to another, the proximate cause of which results in an injury." Zarecky v. Thompson, 634 N.W.2d 311, 316 (S.D. 2001) (internal quotations omitted).

Appellant contends that IHS dentists provided substandard medical care to Little White Man, Sr. and that the substandard care was the proximate cause of his death or at least his decreased chance of survival and his increased pain. In particular, appellant asserts that the district court made an implicit finding of substandard care and erred in finding that the substandard care was not the proximate cause of Little White Man, Sr.'s death or decreased chance of survival and increased pain. For purposes of this appeal, we need not determine whether the district court made an implicit finding or if Little White Man, Sr. received substandard care. Even if we assume that Little White Man, Sr. did receive substandard care, the district court's finding that the appellant failed to prove that any harm done was the proximate cause of the injury was not clear error. See LaRoche v. United States, 779 F.2d 1372, 1373 (8th Cir. 1986) (reviewing findings of fact for clear error); Luther v. City of Winner, 674 N.W.2d 339, 348 (S.D. 2004) (stating that under South Dakota law proximate cause is ordinarily a question of fact).

The burden is on the appellant to prove that the failure of IHS's dentists to provide standard care was the proximate cause of, or a substantial factor in bringing about, Little White Man, Sr.'s death or decreased chance of survival and increased pain. Williams v. United States, 450 F. Supp. 1040, 1045-46 (D.S.D. 1978). The district court concluded that the appellant had not met its burden because it did not show that Little White Man, Sr.'s medical treatment would have been different if the cancer had been detected earlier. Appellant argues that this was error because the district court did not consider the opinion of Dr. Gunner that the cancer could have been cured if diagnosed earlier. Appellant also argues that the opinions of Dr. Gunderson and Dr. Drummond on which the district court based its decisions were merely guesses that lacked credibility.

The district court in this case held a full trial and heard expert testimony presented by both sides. We give due regard "to the opportunity of the trial court to judge the credibility of the witness." Fed. R. Civ. P. 52(a). A review of the record

-7-

shows that although all of the experts agreed that early detection is critical to successfully treating cancer, none of the experts, including Little White Man, Sr.'s expert, Dr. Gunner, provided sufficient evidence to show that an earlier diagnosis would have prevented Little White Man, Sr.'s death or lessened his pain. In fact, the testimony of Dr. Gunderson and Dr. Drummond "supports the opposite conclusion, that an earlier diagnosis would not have saved Little White Man [Sr.]." Further, there appears to be little evidence that the course of treatment would have been different or that Little White Man, Sr. would have been spared the side effects of the aggressive therapy regimen had the cancer been detected sooner. The testimony of the experts, including Dr. Gunner, does not demonstrate that IHS's treatment was a substantial factor in Little White Man, Sr.'s death or the pain he endured during his therapy. Therefore, the district court did not err in concluding that the appellant failed to show that IHS's failure to detect the cancer sooner was a proximate cause of Little White Man, Sr.'s death or decreased chance of survival and increased pain.

Accordingly, we affirm the decision of the district court.

_____